## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## BENTON DIVISION

| | | |
|---|---|---|
| AMY HERNANDEZ, as Administrator | ) | |
| of the Estate of ALEX ALVAREZ, deceased | ) | |
|     Plaintiff | ) | |
| v. | ) | Case No. 3:22-cv-566 |
| VIPIN SHAH, MD, INDIVIDUAL APPEARING ON | ) | |
| EXHIBIT A, believed to be Deanna Seed, INDIVIDUAL | ) | |
| APPEARING ON EXHIBIT B, name currently unknown, | ) | |
| INDIVIDUAL APPEARING ON EXHIBIT C, name | ) | |
| currently unknown, INDIVIDUAL APPEARING ON | ) | |
| EXHIBIT D, believed to be Pamela Ward, and | ) | |
| WEXFORD HEALTH SOURCES, INC; | ) | |
|     Defendants | ) | |

## COMPLAINT

Now comes the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, by and through her attorneys, LOIZZI CÁRDENAS LAW, and complaining of the Defendants states as follows:

### JURISDICTION AND VENUE

1. This is a medical malpractice and deliberate indifference case involving a delay in authorizing the Plaintiff's decedent, ALEX ALVAREZ, medical attention and care.

2. The delay was due to deliberate indifference to Plaintiff's decedent's serious medical condition and constituted a significant departure from the applicable standards of medical care.

3. The Federal District Court has federal question jurisdiction of this cause under 28 U.S.C. § 1331. The Defendants' deliberate indifference violated the Plaintiff's decedent's Eighth Amendment right to be free from cruel and unusual punishment. The Plaintiff seeks redress of this right under 42 U.S.C §1983.

4. The Federal District Court has diversity of citizenship jurisdiction of this cause under 28 U.S.C. § 1332. The Plaintiff is a citizen of the State of Texas. The Defendant, Wexford Health Sources, Inc., is a corporation formed under the laws of the State of Florida with its principal place of business in the State of Pennsylvania. Defendants, VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, B, C, D are, upon information and belief, residents of the State of Illinois. The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

5. The Federal District Court may exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Venue is proper under Title 28 of the United States Code (28 U.S.C. Section 1391). This action properly lies in the Southern District of Illinois as the claim arose out of an incident that occurred in this district.

### PARTIES

1. Plaintiff, AMY HERNANDEZ, is the sister of the decedent and the administrator of the Estate of ALEX ALVAREZ. Ms. HERNANDEZ is a citizen of the United States and domiciled in Edinburg, Texas.

2. The Plaintiff's decedent, ALEX ALVAREZ, was a citizen of the United States and a resident of Sumner, Illinois. Mr. ALVAREZ was in the custody of the Illinois Department of Corrections ("IDOC") as an inmate of the Lawrence Correctional Center. Mr. ALVAREZ died on August 9, 2020, while in custody of the IDOC as an inmate.

3. Defendant, WEXFORD HEALTH SOURCES, INC ("WEXFORD"), is a corporation formed under the laws of the State of Florida with its principal place of business in Pittsburgh, Pennsylvania. Wexford provides medical services to inmates at IDOC facilities.

4. At all times relevant, WEXFORD had a contractual relationship with IDOC. Pursuant to that contractual relationship, IDOC, an agency of the State of Illinois, delegated responsibility for providing reasonable medical care to inmates in IDOC custody to WEXFORD. As an IDOC agent exercising delegated governmental functions, WEXFORD is a state actor under 42 U.S.C. §1983.

5. Upon information and belief, Defendant, VIPIN SHAH, MD, is a citizen of the United States and domiciled in Lawrence County, Illinois.

6. Defendant, VIPIN SHAH, MD is a physician who is an agent, servant or employee of WEXFORD. At all times relevant to this action, VIPIN SHAH, MD served as a general physician at Lawrence Correctional Center. Due to Mr. ALVAREZ's status as an inmate at Lawrence Correctional Center, VIPIN SHAH, MD was responsible for Mr. ALVAREZ's medical care.

7. Upon information and belief, Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, believed to be Deanna Seed, is a citizen of the United States and domiciled in Lawrence County, Illinois. Defendant Individual Appearing on Exhibit A refers to the individual whose signature appears on attached Exhibit A.

8. Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, is, upon information and belief, an agent, servant or employee of WEXFORD. At all times relevant to this action, INDIVIDUAL APPEARING ON EXHIBIT A served as a nurse at Lawrence Correctional Center. Due to Mr. ALVAREZ's status as an inmate at Lawrence Correctional Center, INDIVIDUAL APPEARING ON EXHIBIT A was responsible for Mr. ALVAREZ's medical care.

9. Upon information and belief, Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, name currently unknown, is a citizen of the United States and domiciled in Lawrence County, Illinois. Defendant Individual Appearing on Exhibit B refers to the individual whose signature appears on the attached Exhibit B.

10. Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, is, upon information and belief, an agent, servant or employee of WEXFORD. At all times relevant to this action, INDIVIDUAL APPEARING ON EXHIBIT B served as a nurse at Lawrence Correctional Center. Due to Mr. ALVAREZ's status as an inmate at Lawrence Correctional Center, INDIVIDUAL APPEARING ON EXHIBIT B was responsible for Mr. ALVAREZ's medical care.

11. Upon information and belief, Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, name currently unknown, is a citizen of the United States and domiciled in Lawrence County, Illinois. Defendant Individual Appearing on Exhibit C refers to the individual whose signature appears on the attached Exhibit C.

12. Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, is, upon information and belief, an agent, servant or employee of WEXFORD. At all times relevant to this action, INDIVIDUAL APPEARING ON EXHIBIT C served as a nurse at Lawrence Correctional Center. Due to Mr. ALVAREZ's status as an inmate at Lawrence Correctional Center, INDIVIDUAL APPEARING ON EXHIBIT C was responsible for Mr. ALVAREZ's medical care.

13. Upon information and belief, Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, believed to be Pamela Ward, is a citizen of the United States and domiciled in Lawrence County, Illinois. Defendant Individual Appearing on Exhibit D refers to the individual whose signature appears on the attached Exhibit D.

14. Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, is an agent, servant or employee of WEXFORD. At all times relevant to this action, INDIVIDUAL APPEARING ON EXHIBIT D served as a nurse at Lawrence Correctional Center. Due to Mr. ALVAREZ's status as an inmate at Lawrence Correctional Center, INDIVIDUAL APPEARING ON EXHIBIT D was responsible for Mr. ALVAREZ's medical care.

## FACTS

1. Defendant, WEXFORD at all relevant times operated within Lawrence Correctional Center to provide medical care to inmates.

2. This claim concerns the substandard medical care provided to Mr. ALVAREZ while an inmate at Lawrence Correctional Center by agents, servants or employees of WEXFORD, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D.

3. On or about October 8, 2019, Mr. ALVAREZ was taken from Lawrence Correctional Center to Carle Foundation Hospital in Urbana, Illinois for an upper GI endoscopy, which showed Grade I esophageal varices, Grade A esophagitis, and gastritis.

4. Records showing these impressions were included in Mr. ALVAREZ's medical record at Lawrence Correctional Center.

5. On or about June 3, 2020, at approximately 2:45 a.m., Mr. ALVAREZ presented to Lawrence Correctional Center infirmary and/or sick call complaining of abdominal pain, coughing up blood / nickel-size blood clots, and bloody stools.

6. MR. ALVAREZ was seen by a nurse who noted his symptoms and his history of esophageal varices and hepatitis C.

7. Approximately 40 minutes later, at approximately 3;25 a.m. on or about June 3, 2020, Mr. ALVAREZ was transported to Carle Hospital Emergency Department.

8. A doctor at Carle Hospital performed an esophagogastroduoenoscopy, which indicated that MR. ALVAREZ was suffering from large esophageal varices, an ulcer overlying one of the esophageal varices, chronic active gastritis, and at least 2-4 gastric ulcers with necrosis. The scope further indicated a large fresh clot in MR. ALVAREZ's stomach.

9. MR. ALVAREZ was treated for these conditions at Carle Hospital and discharged to Lawrence Correctional Center on or about June 4, 2020.

10. Records of Mr. ALVAREZ's visit to Carle Hospital on June 3-4, 2020 were included in Mr. ALVAREZ's medical record at Lawrence Correctional Center.

11. An outpatient progress note dated June 4, 2020 and signed by Defendant INDIVIDUAL APPEARING ON EXHIBIT A noted that MR. ALVAREZ had been diagnosed with esophageal and gastric ulcers.

12. By the night of August 7-8, 2020, MR. ALVAREZ developed a massive gastrointestinal hemorrhage with a large amount of bleeding in his stomach as a result of his esophageal varices and/or gastric ulcers. This was a life-threatening condition that would cause MR. ALVAREZ to bleed to death without immediate medical treatment at a hospital to stop the bleeding.

13. On or about August 8, 2020, at approximately 6:00 a.m., Mr. ALVAREZ presented to the Lawrence Correctional Center infirmary and/or sick call complaining of bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea. Given Mr. ALVAREZ's recent history of gastrointestinal bleeding and esophageal and gastric ulcers / varices, Mr. ALVAREZ's symptoms indicated that he was suffering from internal bleeding and needed emergency medical treatment at a hospital to stop the bleeding.

14. On or about August 8, 2020, at approximately 6:00 a.m., Mr. ALVAREZ saw Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, regarding his complaints. Defendant INDIVIDUAL APPEARING ON EXHIBIT A was aware of MR. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers.

15. Yet, INDIVIDUAL APPEARING ON EXHIBIT A advised Mr. ALVAREZ to return to sick call if symptoms persisted or worsened after two weeks.

16. On or about August 8, 2020, at approximately 6:20 a.m., Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, spoke, regarding Mr. ALVAREZ's complaints, with Defendant, VIPIN SHAH, MD. Dr. SHAHwas aware of Mr. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers from Mr. ALVAREZ's medical records.

17. Defendant, VIPIN SHAH, MD ordered a blood test for Mr. ALVAREZ and directed that abnormal results be reported to him.

18. On or about August 8, 2020, at approximately 7:30 a.m., Defendant, INDIVIDUAL APPEARING ON EXHIBIT B saw Mr. ALVAREZ and advised Mr. ALVAREZ to notify the nurse if any bleeding occurred.

19. On or about August 8, 2020, at approximately 7:30 a.m., Mr. ALVAREZ was sent back to his cell. This was despite the fact that Mr. ALVAREZ's medical records showed a history of gastrointestinal bleeding and esophageal varices and gastric ulcers, and that Mr. ALVAREZ's symptoms indicated the need for emergency medical treatment at a hospital.

20. On or about August 8, 2020, at approximately 3:15 p.m., MR. ALVAREZ saw Defendant INDIVIDUAL APPEARING ON EXHIBIT C, who ordered MR. ALVAREZ to let INDIVIDUAL APPEARING ON EXHIBIT C see MR. ALVAREZ'S stool. INDIVIDUAL APPEARING ON EXHIBIT C noted that MR. ALVAREZ was wearing adult diapers.

21. On or about August 8, 2020, at approximately 4:20 p.m., Mr. ALVAREZ showed Defendant INDIVIDUAL APPEARING ON EXHIBIT C his bloody stool and advised Defendant INDIVIDUAL APPEARING ON EXHIBIT C that it may be his varices or ulcer. Defendant INDIVIDUAL APPEARING ON EXHIBIT C told Mr. ALVAREZ the bleeding was not from his varices or ulcer despite Mr. ALVAREZ's medical records showing a history of gastrointestinal bleeding and esophageal varices and gastric ulcers.

22. Defendant INDIVIDUAL APPEARING ON EXHIBIT C noted a diagnosis of "GI Bleed vs Internal hemorrhoids" and a deterioration in comfort, but returned MR. ALVAREZ to his cell.

23. On or about August 8, 2020, at approximately 11:15 p.m., Mr. ALVAREZ presented to the infirmary and/or sick call complaining of passing blood and stool and saw Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, regarding his complaints.

24. At approximately 11:39 p.m. on or about August 8, 2020, INDIVIDUAL APPEARING ON EXHIBIT A brought INDIVIDUAL APPEARING ON EXHIBIT C results of the lab tests ordered by Defendant, VIPIN SHAH, MD, which showed that MR. ALVAREZ's hemoglobin level and lab results were lower than normal. The lab results further confirmed that Mr. ALVAREZ was bleeding internally and in need of emergency medical treatment at a hospital.

25. INDIVIDUAL APPEARING ON EXHIBIT C noted a diagnosis of gastrointestinal bleeding or internal hemorrhoids and deterioration in comfort, and noted that she would have the day shift call and report the lab results to Defendant, VIPIN SHAH, MD.

26. Rather than attempt to transport Mr. ALVAREZ to a hospital, Defendant INDIVIDUAL APPEARING ON EXHIBIT C gave Mr. ALVAREZ fresh diapers and retuned him to his cell at approximately 11:40 p.m.

27. The following morning, on or about August 9, 2020, Defendant, VIPIN SHAH, MD was notified of Mr. ALVAREZ'S lab results, which showed that Mr. ALVAREZ was losing blood and in need of emergency medical care at a hospital, but VIPIN SHAH, MD did not order Mr. ALVAREZ to be transported to a hospital. Instead, VIPIN SHAH, MD scheduled an appointment with Mr. ALVAREZ two days later on or about August 11, 2020.

28. On or about August 9, 2020, at approximately 5:30 p.m., Mr. ALVAREZ spoke with Defendant, INDIVIDUAL APPEARING ON EXHIBIT D. Mr. ALVAREZ requested to see a doctor but was denied the request and upon information and belief was told that he could see a doctor in the morning.

29. On or about August 9, 2020, at approximately 9:15 p.m., Mr. ALVAREZ was found unresponsive and bleeding in his cell.

30. Mr. ALVAREZ was bleeding to death, and in desperate need of an ambulance to take him to the hospital, but Defendant INDIVIDUAL APPEARING ON EXIBIT D put Mr. ALVAREZ in a wheelchair and wheeled him to the first aid room in the health care unit at Lawrence Correctional Center.

31. Mr. ALVAREZ arrived at approximately 9:18 p.m. in the first aid room at the heath care unit at Lawrence Correctional Center where he was attended to by Defendant INDIVIDUAL APPEARING ON EXHIBIT C and Defendant INDIVIDUAL APPEARING ON EXIBIT D.

32. Neither Defendant INDIVIDUAL APPEARING ON EXHIBIT C nor Defendant INDIVIDUAL APPEARING ON EXIBIT D called for an ambulance when Mr. ALVAREZ initially arrived in the health care unit.

33. Instead, Defendant INDIVIDUAL APPEARING ON EXHIBIT C began clearing blood off of Mr. ALVAREZ and attempted to get a blood pressure reading. Defendant INDIVIDUAL APPEARING ON EXHIBIT C could not get a blood pressure reading and noted that Mr. ALVAREZ was very clammy and unable to hold still.

34. Defendant INDIVIDUAL APPEARING ON EXIBIT D also could not detect a blood pressure.

35. Between approximately 9:25 and 9:30 p.m. on or about August 9, 2020, Mr. ALVAREZ managed to gather the strength to cry out "I want to go to hospital" and "Help me I need an ambulance."

36. Between approximately 9:25 p.m. and 9:30 p.m. on or about August 9, 2020, Defendant INDIVIDUAL APPEARING ON EXIBIT D left the first aid room and called Defendant, VIPIN SHAH, MD to inform him of Mr. ALVAREZ'S status. VIPIN SHAH, MD instructed Defendant INDIVIDUAL APPEARING ON EXIBIT D to call the hospital.

37. At approximately the same time Defendant INDIVIDUAL APPEARING ON EXIBIT D was speaking with Defendant, VIPIN SHAH, MD, Mr. ALVAREZ fell back on his cot and white foam began coming from his mouth.

38. Defendant INDIVIDAUL APPEARING ON EXHIBIT C then began CPR and noted that Mr. ALVAREZ had a faint carotid pulse, but no femoral pulse.

39. After speaking to Defendant, VIPIN SHAH, MD, Defendant INDIVIDUAL APPEARING ON EXIBIT D spoke with supervisors at Lawrence Correctional Center regarding calling an ambulance for Mr. ALVAREZ before returning to the first aid room.

40. An ambulance was not requested for Mr. ALVAREZ until some time between approximately 9:35 and 9:39 p.m.

41. As the ambulance was en route to Lawrence Correctional Center, bright red blood began coming out of Mr. ALVAREZ's mouth.

42. The ambulance arrived at the Lawrence Correctional Center at approximately 9:50 p.m.

43. It was another 30 minutes, until approximately 10:20 p.m., before the ambulance was able to leave the Lawrence Correctional Center with Mr. ALVAREZ.

44. Mr. ALVAREZ finally arrived at Carle Hospital at approximately 10:28 p.m. and was pronounced dead several minutes later at approximately 10:37 p.m.

Count I
Violation of the 8th Amendment
Vipin Shah, MD

1. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

2. At all times relevant, the Defendant, VIPIN SHAH, MD was a physician duly licensed by the State of Illinois to practice medicine.

3. At all times relevant, the Defendant, VIPIN SHAH, MD, performed his duties in a manner evidencing deliberate, reckless and/or callous indifference to Mr. ALVAREZ's serious medical needs for the diagnosis and treatment of his gastrointestinal bleeding, thus depriving him of his rights protected by the Eighth Amendment of the United States Constitution.

4. The Defendant, VIPIN SHAH, MD, was aware of Mr. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers and his abnormal blood test results, which showed that Mr. ALVAREZ was losing blood and in need of emergency medical care.

5. The Defendant, VIPIN SHAH, MD, knew that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

6. The Defendant, VIPIN SHAH, MD, knew that a substantial risk of harm to Mr. ALVAREZ existed if Mr. ALVAREZ's gastrointestinal bleeding was not treated immediately.

7. The Defendant, VIPIN SHAH, MD, was deliberately indifferent to Mr. ALVAREZ's serious medical needs when he:

    a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

    b. Failed to examine Mr. ALVAREZ on August 8, 2020 or August 9, 2020 given his medical history;

    c. Failed to timely address Mr. ALVAREZ's complaints, including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

    d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

    e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

    f. Allowed Mr. ALVAREZ to be returned to his cell knowing his history of illness and present complaints; and

    g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions.

8. The aforementioned acts or omissions exacerbated Mr. ALVAREZ's condition and deviated so far from clearly established medical standards as to evidence deliberate indifference to Mr. ALVAREZ's serious medical needs.

9. At all times relevant, the Defendant, VIPIN SHAH, MD acted to deprive and did deprive the Plaintiff's decedent, ALEX ALVAREZ, of rights, privileges and immunities secured by the Constitution and laws of the United States and the State of Illinois.

10. The conduct of the Defendant, VIPIN SHAH, MD, violated the rights of the Plaintiff's decedent to be free from cruel and unusual punishment; a right guaranteed by the Eighth Amendment of the United States Constitution.

11. As a direct and proximate cause of the Defendant's VIPIN SHAH, MD's deprivation of Mr. ALVAREZ Eighth Amendment rights, Mr. ALVAREZ suffered physical and mental injuries, including but not limited to unnecessary and prolonged pain and suffering and untimely death.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, VIPIN SHAH, MD, in a sum in excess of $75,000 for compensatory and punitive damages and for any other relief deemed appropriate under the circumstances.

Count II
Violation of the 8th Amendment
Individual Appearing on Exhibit A

1. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

2. At all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, performed his or her duties in manner evidencing deliberate, reckless and/or callous indifference to Mr. ALVAREZ's serious medical for the diagnosis and treatment of his gastrointestinal bleeding, thus depriving him of his rights protected by the Eighth Amendment of the United States Constitution.

3. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, was aware of Mr. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers.

4. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, knew that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

5. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, knew that a substantial risk of harm to Mr. ALVAREZ existed if Mr. ALVAREZ's gastrointestinal bleeding was not treated immediately.

6. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, was deliberately indifferent to Mr. ALVAREZ's serious medical needs when he or she:

   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

   b. Failed to appropriately examine Mr. ALVAREZ on August 8 and 9, 2020, given his medical history;

   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

   e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

   f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

   g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

   h. Failed to intervene when Mr. ALVAREZ was sent back to his cell and/or emergency medical attention was not requested for Mr. ALVAREZ.

7. The aforementioned acts or omissions exacerbated Mr. ALVAREZ's condition and deviated so far from clearly established nursing standards as to evidence deliberate indifference to Mr. ALVAREZ's serious medical condition.

8. At all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, acted to deprive and did deprive the Plaintiff's decedent, ALEX ALVAREZ, of rights, privileges and immunities secured by the Constitution and laws of the United States and the State of Illinois.

9. The conduct of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, violated the rights of the Plaintiff's decedent to be free from cruel and unusual punishment; a right guaranteed by the Eighth Amendment of the United States Constitution.

10. As a direct and proximate cause of Defendant, INDIVIDUAL APPEARING ON EXHIBIT A's deprivation of Mr. ALVAREZ's Eighth Amendment rights, Mr. ALVAREZ suffered physical and mental injuries, including but not limited to unnecessary and prolonged pain and suffering and untimely death.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, in a sum in excess of $75,000 for compensatory and punitive damages and for any other relief deemed appropriate under the circumstances.

Count III
Violation of the 8th Amendment
Individual Appearing on Exhibit B

Count III
Violation of the 8th Amendment
Individual Appearing on Exhibit B

1. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

2. At all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, performed his or her duties in manner evidencing deliberate, reckless and/or callous indifference to Mr. ALVAREZ's serious medical needs for the diagnosis and treatment of his gastrointestinal bleeding, thus depriving him of his rights protected by the Eighth Amendment of the United States Constitution.

3. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, was aware of Mr. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers.

4. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, knew that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

5. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, knew that a substantial risk of harm to Mr. ALVAREZ existed if Mr. ALVAREZ's gastrointestinal bleeding was not treated immediately.

6. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, was deliberately indifferent to Mr. ALVAREZ's serious medical needs when he or she:

   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020, 2020 given his medical history;

   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

   e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

   f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

   g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

   h. Failed to intervene when Mr. ALVAREZ was sent back to his cell and/or emergency medical attention was not requested for Mr. ALVAREZ.

7. The aforementioned acts or omissions exacerbated Mr. ALVAREZ's condition and deviated so far from clearly established nursing standards as to evidence deliberate indifference to Mr. ALVAREZ's serious medical condition.

8. At all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B acted to deprive and did deprive the Plaintiff's decedent, ALEX ALVAREZ, of rights, privileges and immunities secured by the Constitution and laws of the United States and the State of Illinois.

9. The conduct of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, violated the rights of the Plaintiff's decedent to be free from cruel and unusual punishment; a right guaranteed by the Eighth Amendment of the United States Constitution.

10. As a direct and proximate cause of Defendant, INDIVIDUAL APPEARING ON EXHIBIT B's deprivation of Mr. ALVAREZ's Eighth Amendment rights, Mr. ALVAREZ suffered physical and mental injuries, including but not limited to unnecessary and prolonged pain and suffering and untimely death.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, in a sum in excess of $75,000 for compensatory and punitive damages, and for any other relief deemed appropriate under the circumstances.

Count IV
Violation of the 8th Amendment
Individual Appearing on Exhibit C

1. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.
2. At all times relevant, the Defendant INDIVIDUAL APPEARING ON EXHIBIT C, performed his or her duties in manner evidencing deliberate, reckless and/or callous indifference to Mr. ALVAREZ's serious medical needs for the diagnosis and treatment of his gastrointestinal bleeding, thus depriving him of his rights protected by the Eighth Amendment of the United States Constitution.
3. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, was aware of Mr. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers.
4. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, knew known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.
5. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, knew that a substantial risk of harm to Mr. ALVAREZ existed if Mr. ALVAREZ's gastrointestinal bleeding was not treated immediately.
6. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, was deliberately indifferent to Mr. ALVAREZ's serious medical needs when he or she:
   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;
   b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020 and August 9, 2020 given his medical history;
   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;
   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;
   e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;
   f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;
   g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

     h. Failed to intervene when Mr. ALVAREZ was sent back to his cell and/or emergency medical attention was not requested for Mr. ALVAREZ.

7. The aforementioned acts or omissions exacerbated Mr. ALVAREZ's condition and deviated so far from clearly established nursing standards as to evidence deliberate indifference to Mr. ALVAREZ's serious medical condition.

8. At all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, acted to deprive and did deprive the Plaintiff's decedent, ALEX ALVAREZ, of rights, privileges and immunities secured by the Constitution and laws of the United States and the State of Illinois.

9. The conduct of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, violated the rights of the Plaintiff's decedent to be free from cruel and unusual punishment; a right guaranteed by the Eighth Amendment of the United States Constitution.

10. As a direct and proximate cause of Defendant INDIVIDUAL APPEARING ON EXHIBIT C's deprivation of Mr. ALVAREZ's Eighth Amendment rights, Mr. ALVAREZ suffered physical and mental injuries, including but not limited to unnecessary and prolonged pain and suffering and untimely death.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, in a sum in excess of $75,000 for compensatory and punitive damages and for any other relief deemed appropriate under the circumstances.

<u>Count V</u>
<u>Violation of the 8th Amendment</u>
<u>Individual Appearing on Exhibit D</u>

1. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

2. At all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, performed his or her duties in manner evidencing deliberate, reckless and/or callous indifference to Mr. ALVAREZ's serious medical needs for the diagnosis and treatment of his gastrointestinal bleeding, thus depriving him of his rights protected by the Eighth Amendment of the United States Constitution.

3. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, was aware of Mr. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers.

4. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, knew that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

5. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, knew that a substantial risk of harm to Mr. ALVAREZ existed if Mr. ALVAREZ's gastrointestinal bleeding was not treated immediately.

6. The Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, was deliberately indifferent to Mr. ALVAREZ's serious medical needs when he or she:
     a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

    b. Failed to appropriately examine Mr. ALVAREZ on August 9, 2020 given his medical history;

    c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

    d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

    e. Denied a request to see a doctor on August 9, 2020;

    f. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

    g. Failed to intervene when emergency medical attention was not requested for Mr. ALVAREZ.

7. The aforementioned acts or omissions exacerbated Mr. ALVAREZ's condition and deviated so far from clearly established nursing standards as to evidence deliberate indifference to Mr. ALVAREZ's serious medical condition.

8. At all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D acted to deprive and did deprive the Plaintiff's decedent, ALEX ALVAREZ, of rights, privileges and immunities secured by the Constitution and laws of the United States and the State of Illinois.

9. The conduct of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, violated the rights of the Plaintiff's decedent to be free from cruel and unusual punishment; a right guaranteed by the Eighth Amendment of the United States Constitution.

10. As a direct and proximate cause of Defendant, INDIVIDUAL APPEARING ON EXHIBIT D's deprivation of Mr. ALVAREZ's Eighth Amendment rights, Mr. ALVAREZ suffered physical and mental injuries, including but not limited to unnecessary and prolonged pain and suffering and untimely death.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, VIPIN SHAH, MD, in a sum in excess of $75,000 for compensatory and punitive damages and for any other relief deemed appropriate under the circumstances.

Count VI
Violation of the 8th Amendment
Wexford Health Sources, Inc

1. Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

2. At all times relevant, WEXFORD, through its employees and agents, was acting under color of law.

3. At all times relevant, WEXFORD, through its employees and agents acted to deprive and did deprive the Plaintiff's decedent, ALEX ALVAREZ, of rights, privileges and immunities secured by the Eight Amendment of the Constitution and laws of the United States and the State of Illinois.

4. At all times relevant, WEXFORD, through its employees and agents, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON

EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, was aware of Mr. ALVAREZ's history of gastrointestinal bleeding and esophageal varices and gastric ulcers.

5. At all times relevant, the Defendant, WEXFORD, through its employees and agents, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, knew that gastrointestinal bleeding is an objectively serious medical condition requiring immediate medical attention, particularly in a patient with a history of gastrointestinal bleeding and esophageal varices and gastric ulcers.

6. At all times relevant, WEXFORD, through its employees and agents, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, knew that a substantial risk of harm to Mr. ALVAREZ existed if his gastrointestinal bleeding was not treated immediately, yet delayed the provision of life-saving emergency treatment to Mr. ALVAREZ.

7. The delay in providing Mr. ALVAREZ emergency medical treatment was the result of Wexford's policies and procedures, which, rather than ensure quality and timely care, instead result in reduced and delayed access to care and/or inadequate care to inmates with serious medical conditions.

8. Wexford does not maintain the medical staff or equipment necessary to diagnose and treat serious medical conditions, such as Mr. ALVAREZ's gastrointestinal bleed, at the Lawrence Correctional Center.

9. Inmates complaining of serious medical problems are often seen by nurses rather than doctors, who are more expensive to employ, and receive only basic treatment for immediate symptoms rather than necessary treatment for their underlying medical condition.

10. WEXFORD's treatment policies encourage conservative care to cut costs, which causes its employees to withhold necessary medical care from inmates with serious medical conditions requiring diagnostic testing or outside care. Inmates are often delayed or denied necessary off-site medical services and diagnostic testing out of concern for Wexford's corporate objective of minimizing the cost associated with inmate medical care.

11. These policies and procedures cause substantial delays in approving, scheduling and providing outside treatment, lack of communication or inadequate communication among care providers, and diffusion of responsibility across care providers.

12. The delay in conducting a proper examination, conducting sufficient diagnostic testing, and referring Mr. ALVAREZ to a hospital were motivated by these policies and procedures and the financial incentives of WEXFORD.

13. These policies and procedures are common to IDOC facilities where Wexford is responsible for inmate medical care.

14. The reports of the court-appointed experts in *Lippert v. Godinez* detail how medical staff at IDOC facilities where Wexford is responsible for inmate medical care frequently fail to send patients out for necessary emergency room services and/or hospitalization and fail to contact a higher-level clinician when necessary.

15. In fact, the first *Lippert* report, issued in May 2015, specifically highlights a case where an IDOC inmate died as a result of not receiving necessary off-site emergency medical services for gastrointestinal bleeding from esophageal varices, despite presenting with

bloody stools, weakness, dizziness, and dropping blood counts. The first Lippert report specifically warned that "[i]t is not appropriate to put a high-risk patient with active GI bleeding in a prison infirmary" and "[w]hen you identify a patient who has acute ongoing blood loss, to not send him out is incomprehensible."

16. Despite the findings of the court-appointed experts in *Lippert*, WEXFORD, maintained the policies and procedures that resulted in Mr. Alvarez being denied life-saving emergency treatment.

17. The policies and procedures of WEXFORD violated the rights of the Plaintiff's decedent to be free from cruel and unusual punishment; a right guaranteed by the Eighth Amendment of the United States Constitution.

18. Said policies and procedures of WEXFORD caused suffering and the ultimate and untimely death of the Plaintiff's decedent, and resulted in and proximately caused the Plaintiff's damages, including but not limited to unnecessary and prolonged pain and suffering and untimely death.

19. WEXFORD is liable under 42 U.S.C. § 1983 for the damages caused by its deliberately indifferent policies and procedures.

20. In addition, WEXFORD should be held liable under 42 U.S.C. § 1983 for the damages caused by the deliberate indifference of its employees acting within the scope of their employment. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793-95 (7th Cir. 2014).

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, WEXFORD HEALTH SERVICES, INC, in a sum in excess of $75,000 for compensatory and punitive damages and for any other relief deemed appropriate under the circumstances.

## Count VII
## Wrongful Death Act
## Vipin Shah, MD

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 740 ILCS 180/2.1, commonly known as the Wrongful Death Act.

2. That at all times relevant, the Defendant, VIPIN SHAH, MD, was a physician duly licensed by the State of Illinois to practice medicine.

3. That at all times relevant, the Defendant, VIPIN SHAH, MD was a medical doctor practicing as an employee for WEXFORD at Lawrence Correctional Center.

4. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

5. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

6. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of VIPIN SHAH, MD for complaints of bleeding from the rectum.

7. That at all relevant times, the Defendant, VIPIN SHAH, MD, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

8. It was then and there the duty of the Defendant, VIPIN SHAH, MD to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.

9. Notwithstanding that duty, the Defendant, VIPIN SHAH, MD, was guilty of one or more of the following careless and negligent acts or omissions:

   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

   b. Failed to examine Mr. ALVAREZ on August 8, 2020 or August 9, 2020 given his medical history;

   c. Failed to timely address Mr. ALVAREZ's complaints, including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

   e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

   f. Allowed Mr. ALVAREZ to be returned to his cell knowing his history of illness and present complaints;

   g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

   h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

10. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, VIPIN SHAH, MD, the Plaintiff's decedent, ALEX ALVAREZ, suffered severe and permanent injuries which caused or contributed to his death on August 9, 2020.

11. Plaintiff's decedent, ALEX ALVAREZ, left surviving various persons who were his next of kin, which included the following individuals:

    a. Amy Hernandez (sister)

    b. Irene Hernandez (sister)

    c. Lori Ann Palmer (sister)

    d. Cynthia Hernandez (sister)

    e. Joe Hernandez (brother)

12. All of the Decedent's next of kin suffered pecuniary injuries as a result of the death of the Plaintiff's decedent, ALEX ALVAREZ, including the loss of companionship, society, guidance and material services of the deceased, as well as grief and sorrow. Further the Estate of the Plaintiff's decedent, ALEX ALVAREZ, was diminished by virtue of medical and funeral expenses that were incurred.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, VIPIN SHAH, MD, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances

Count VIII
Survival Act
Vipin Shah, MD

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.
2. That at all times relevant, the Defendant, VIPIN SHAH, MD, was a physician duly licensed by the State of Illinois to practice medicine.
3. That at all times relevant, the Defendant, VIPIN SHAH, MD was a medical doctor practicing as an employee of WEXFORD at Lawrence Correctional Center.
4. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.
5. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.
6. That on or about August 8, 2020 through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of VIPIN SHAH, MD for complaints of bleeding from his rectum.
7. That at all times relevant, the Defendant, VIPIN SHAH, MD, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.
8. It was then and there the duty of the Defendant, VIPIN SHAH, MD to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.
9. Notwithstanding that duty, the Defendant, VIPIN SHAH, MD, was guilty of one or more of the following careless and negligent acts or omissions:
   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;
   b. Failed to examine Mr. ALVAREZ on August 8, 2020 or August 9, 2020 given his medical history;
   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;
   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

f. Allowed Mr. ALVAREZ to be returned to his cell knowing his history of illness and present complaints;

g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

10. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, VINPIN SHAH, MD, the Plaintiff's decedent, ALEX ALVAREZ, suffered injuries of personal and pecuniary nature, including but not limited to, medical expenses, physical and emotional trauma, conscious pain and suffering and loss of normal life, all of which combined or contributed to his death on or about August 9, 2020 and Plaintiff's decedent, ALEX ALVAREZ, would have been entitled to receive compensation from the Defendant, VIPIN SHAH, MD, for these injuries had Plaintiff's decedent survived.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, VIPIN SHAH, MD, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

Count IX
Wrongful Death Act
Individual Appearing on Exhibit A

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 740 ILCS 180/2.1, commonly known as the Wrongful Death Act.

2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.

3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

5. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT A for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.

8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, was guilty of one or more of the following careless and negligent acts or omissions:

    a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

    b. Failed to appropriately examine Mr. ALVAREZ on August 8 and August 9, 2020, given his medical history;

    c. Failed to timely address Mr. ALVAREZ's complaints, including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

    d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

    e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

    f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

    g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

    h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, the Plaintiff's decedent, ALEX ALVAREZ, suffered severe and permanent injuries which caused or contributed to his death on August 9, 2020.

10. Plaintiff's decedent, ALEX ALVAREZ, left surviving various persons who were his next of kin, which included the following individuals:

    a. Amy Hernandez (sister)

    b. Irene Hernandez (sister)

    c. Lori Ann Palmer (sister)

    d. Cynthia Hernandez (sister)

    e. Joe Hernandez (brother)

11. All of the Decedent's next of kin suffered pecuniary injuries as a result of the death of the Plaintiff's decedent, ALEX ALVAREZ, including the loss of companionship, society, guidance and material services of the deceased, as well as grief and sorrow. Further, the Estate of the Plaintiff's decedent, ALEX ALVAREZ, was diminished by virtue of medical and funeral expenses that were incurred.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

<u>Count X</u>
<u>Survival Act</u>
<u>Individual Appearing on Exhibit A</u>

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.

3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

5. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT A for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.

8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, was guilty of one or more of the following careless and negligent acts or omissions:

    a. Failed to effectively treat Mr. ALVAREZ's ulcer symptoms including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

    b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020 and August 9, 2020 given his history of illness and history of ulcers;

    c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

    d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

    e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

    f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

    g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

    h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, the Plaintiff's decedent, ALEX ALVAREZ, suffered injuries of personal and pecuniary nature, including but not limited to, medical expenses, physical and emotional trauma, conscious pain and suffering and loss of normal life, all of which combined or contributed to his death on or about August 9, 2020 and Plaintiff's decedent, ALEX ALVAREZ, would have been entitled to receive compensation from the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, for these injuries had Plaintiff's decedent survived.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT A, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

Count XI
Wrongful Death Act
Individual Appearing on Exhibit B

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 740 ILCS 180/2.1, commonly known as the Wrongful Death Act.
2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.
3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.
4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.
5. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT B for complaints of bleeding from his rectum.
6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.
7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.
8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, was guilty of one or more of the following careless and negligent acts or omissions:
   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020, given his medical history;

c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, the Plaintiff's decedent, ALEX ALVAREZ, suffered severe and permanent injuries which caused or contributed to his death on August 9, 2020.

10. Plaintiff's decedent, ALEX ALVAREZ, left surviving various persons who were his next of kin, which included the following individuals:

a. Amy Hernandez (sister)

b. Irene Hernandez (sister)

c. Lori Ann Palmer (sister)

d. Cynthia Hernandez (sister)

e. Joe Hernandez (brother)

11. All of the Decedent's next of kin suffered pecuniary injuries as a result of the death of the Plaintiff's decedent, ALEX ALVAREZ, including the loss of companionship, society, guidance and material services of the deceased, as well as grief and sorrow. Further, the Estate of the Plaintiff's decedent, ALEX ALVAREZ, was diminished by virtue of medical and funeral expenses that were incurred.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

Count XII<br>
Survival Act<br>
Individual Appearing on Exhibit B

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.

3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center

wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

5. That on or about August 8, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT B for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.

8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, was guilty of one or more of the following careless and negligent acts or omissions:

   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020, given his medical history;

   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

   e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

   f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

   g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

   h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, the Plaintiff's decedent, ALEX ALVAREZ, suffered injuries of personal and pecuniary nature, including but not limited to, medical expenses, physical and emotional trauma, conscious pain and suffering and loss of normal life, all of which combined or contributed to his death on or about August 9, 2020, and Plaintiff's decedent, ALEX ALVAREZ, would have been entitled to receive compensation from the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, for these injuries had Plaintiff's decedent survived.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT B, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

Count XIII
Wrongful Death Act
Individual Appearing on Exhibit C

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 740 ILCS 180/2.1, commonly known as the Wrongful Death Act.
2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.
3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.
4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.
5. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT C for complaints of bleeding from his rectum.
6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.
7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.
8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, was guilty of one or more of the following careless and negligent acts or omissions:
   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;
   b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020 and August 9, 2020 given his medical history;
   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;
   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;
f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;
g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and
h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, the Plaintiff's decedent, ALEX ALVAREZ, suffered severe and permanent injuries which caused or contributed to his death on August 9, 2020.

10. Plaintiff's decedent, ALEX ALVAREZ, left surviving various persons who were his next of kin, which included the following individuals:
    a. Amy Hernandez (sister)
    b. Irene Hernandez (sister)
    c. Lori Ann Palmer (sister)
    d. Cynthia Hernandez (sister)
    e. Joe Hernandez (brother)

11. All of the Decedent's next of kin suffered pecuniary injuries as a result of the death of the Plaintiff's decedent, ALEX ALVAREZ, including the loss of companionship, society, guidance and material services of the deceased, as well as grief and sorrow. Further, the Estate of the Plaintiff's decedent, ALEX ALVAREZ, was diminished by virtue of medical and funeral expenses that were incurred.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

Count XIV
Survival Act
Individual Appearing on Exhibit C

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.

3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment

and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

5. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT C for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.

8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, was guilty of one or more of the following careless and negligent acts or omissions:

   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

   b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020 and August 9, 2020 given his history of illness and history of ulcers;

   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

   e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

   f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

   g. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

   h. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, the Plaintiff's decedent, ALEX ALVAREZ, suffered injuries of personal and pecuniary nature, including but not limited to, medical expenses, physical and emotional trauma, conscious pain and suffering and loss of normal life, all of which combined or contributed to his death on or about August 9, 2020 and Plaintiff's decedent, ALEX ALVAREZ, would have been entitled to receive compensation from the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, for these injuries had Plaintiff's decedent survived.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, prays that this Honorable court enter judgment against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT C, in a sum in excess of $75,000.00 and for any other relief deemed appropriate under the circumstances.

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 740 ILCS 180/2.1, commonly known as the Wrongful Death Act.

2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.

3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

5. That on or about August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT D for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.

8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, was guilty of one or more of the following careless and negligent acts or omissions:
   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, and low hemoglobin and lab results;
   b. Failed to appropriately examine Mr. ALVAREZ on August 9, 2020, given his medical history;
   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;
   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;
   e. Denied a request to see a doctor on August 9, 2020;
   f. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and
   g. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, the Plaintiff's

decedent, ALEX ALVAREZ, suffered severe and permanent injuries which caused or contributed to his death on August 9, 2020.

10. Plaintiff's decedent, ALEX ALVAREZ, left surviving various persons who were his next of kin, which included the following individuals:
    a. Amy Hernandez (sister)
    b. Irene Hernandez (sister)
    c. Lori Ann Palmer (sister)
    d. Cynthia Hernandez (sister)
    e. Joe Hernandez (brother)

11. All of the Decedent's next of kin suffered pecuniary injuries as a result of the death of the Plaintiff's decedent, ALEX ALVAREZ, including the loss of companionship, society, guidance and material services of the deceased, as well as grief and sorrow. Further, the Estate of the Plaintiff's decedent, ALEX ALVAREZ, was diminished by virtue of medical and funeral expenses that were incurred.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

Count XVI
Survival Act
Individual Appearing on Exhibit D

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

2. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, was a nurse practicing as an employee of WEXFORD at Lawrence Correctional Center.

3. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors, technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

4. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

5. That on or about August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of INDIVIDUAL APPEARING ON EXHIBIT D for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D to exercise due care and caution over the examination, diagnosis, care and treatment of ALEX ALVAREZ.

8. Notwithstanding that duty, the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, was guilty of one or more of the following careless and negligent acts or omissions:

   a. Failed to effectively treat Mr. ALVAREZ's ulcer symptoms including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

   b. Failed to appropriately examine Mr. ALVAREZ on August 9, 2020 given his medical history;

   c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

   e. Denied a request to see a doctor on August 9, 2020;

   f. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

   g. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, the Plaintiff's decedent, ALEX ALVAREZ, suffered injuries of personal and pecuniary nature, including but not limited to, medical expenses, physical and emotional trauma, conscious pain and suffering and loss of normal life, all of which combined or contributed to his death on or about August 9, 2020 and Plaintiff's decedent, ALEX ALVAREZ, would have been entitled to receive compensation from the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, for these injuries had Plaintiff's decedent survived.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, INDIVIDUAL APPEARING ON EXHIBIT D, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances.

Count XVII

Wrongful Death Act

Wexford Health Sources, Inc (Respondent Superior for Vipin Shah, MD, Individual Appearing on Exhibit A, Individual Appearing on Exhibit B, Individual Appearing on Exhibit C, and Individual Appearing on Exhibit D)

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, brings this action pursuant to 740 ILCS 180/2.1 commonly known as the Wrongful Death Act.

2. That at all times relevant, WEXFORD operated, managed, maintained and controlled a certain medical facility and/or program located within Lawrence Correctional Center wherein it treated persons suffering from various ailments and provided nurses, doctors,

technicians, and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment.

3. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

4. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care and treatment of physicians, nurses and technicians of the Defendant, WEXFORD.

5. That on or about August 8, 2020, through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, WEXFORD, by and through its duly authorized actual or apparent agents, servants and employees, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, WEXFORD, by and through its authorized or apparent agents, servants, and employees including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, to exercise due care and caution in the examination, diagnosis, and treatment of Plaintiff's decedent, which said duty included, but not limited to, the accurate diagnosis and treatment of Plaintiff's decedent, ALEX ALVAREZ, symptoms and complaints.

8. Notwithstanding that duty, the Defendant, WEXFORD, by and through its duly authorized actual or apparent agents, servants and employees, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, was guilty of one or more of the following careless and negligent acts or omissions:

    a. Failed to effectively treat Mr. ALVAREZ's ulcer symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

    b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020, and August 9, 2020, given his medical history;

    c. Failed to timely address Mr. ALVAREZ's complaints including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

    d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

    e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

    f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

    g. Denied a request to see a doctor on August 9, 2020;

    h. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

    i. Was otherwise careless and negligent in treating the Plaintiff's decedent.

9. As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, WEXFORD, the Plaintiff's decedent, ALEX ALVAREZ, suffered severe and permanent injuries, which caused or contributed to his death on August 9, 2020.

10. The Plaintiff's decedent, ALEX ALVAREZ, left surviving various persons who were his next of kin, which included the following individuals

    a. Amy Hernandez (sister)

    b. Irene Hernandez (sister)

    c. Lori Ann Palmer (sister)

    d. Cynthia Hernandez (sister)

    e. Joe Hernandez (brother)

11. All of the Decedent's next of kin suffered pecuniary injuries as a result of the death of the Plaintiff's decedent, ALEX ALVAREZ, including loss of companionship, society, guidance, as well as grief and sorrow. Further the Estate of Plaintiff's decedent, ALEX ALVAREZ, was diminished by virtue of medical and funeral expenses that were incurred.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, WEXFORD HEALTH SOURCES, INC, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances

Count XVIII

Survival Act

Wexford Health Sources, Inc (Respondent Superior for Vipin Shah, MD, Individual Appearing on Exhibit A, Individual Appearing on Exhibit B, Individual Appearing on Exhibit C, and Individual Appearing on Exhibit D)

1. The Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, bring this action pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

2. That at all times relevant, WEXFORD, owned, operated, managed, maintained and controlled a certain facility and/or program located within Lawrence Correctional Center wherein it rated persons suffering from various ailments and provided nurses, doctors, technicians and supplied rooms, laboratories, drugs and certain devices for the needs of patients during their treatment in said hospital.

3. That at all times relevant, the Defendant, WEXFORD, accepted ALEX ALVAREZ, as a patient and agreed to render competent and adequate medical services in conjunction with an illness from which he was then and there suffering, which required medical treatment

and said Defendant, through its employees and/or agents, undertook to render care, diagnosis, treatment and services for pecuniary consideration.

4. That on or about August 8, 2020 through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care and treatment of physicians, nurses and technicians of the Defendant, WEXFORD.

5. That on or about August 8, 2020 through August 9, 2020, the Plaintiff's decedent, ALEX ALVAREZ, was under the care of VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D for complaints of bleeding from his rectum.

6. That at all times relevant, the Defendant, WEXFORD, by and through its duly authorized actual or apparent agents, servants and employees, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, knew or should have known that internal bleeding is an objectively serious medical condition requiring immediate medical attention.

7. It was then and there the duty of the Defendant, WEXFORD, by and through its authorized or apparent agents, servants and employees, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, to exercise due care and caution in the examination, diagnosis and treatment of Plaintiff's decedent, ALEX ALVAREZ's, symptoms and complaints.

8. Notwithstanding that duty, the Defendant, WEXFORD, by and through its duly authorized actual or apparent agents, servants, and employees, including but not limited to VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, INDIVIDUAL APPEARING ON EXHIBIT B, INDIVIDUAL APPEARING ON EXHIBIT C, and INDIVIDUAL APPEARING ON EXHIBIT D, was guilty of one or more of the following careless and negligent acts or omissions:

   a. Failed to effectively treat Mr. ALVAREZ's symptoms, including bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, nausea, low hemoglobin and lab results;

   b. Failed to appropriately examine Mr. ALVAREZ on August 8, 2020, and August 9, 2020 given his medical history;

   c. Failed to timely address Mr. ALVAREZ's complaints, including blood from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea;

   d. Kept Mr. ALVAREZ at the facility knowing it was ill-equipped to observe, monitor and treat Mr. ALVAREZ's condition;

   e. Failed to keep Mr. ALVAREZ at the infirmary and/or sick call to further observe his condition;

   f. Sent Mr. ALVAREZ back to his cell knowing his history of illness and present complaints;

   g. Denied a request to see a doctor on August 9, 2020;

   h. Failed to send Mr. ALVAREZ immediately to the hospital for further monitoring, testing and other interventions; and

      i.   Was otherwise careless and negligent in treating the Plaintiff's decedent.

9.   As a direct and proximate result of the aforementioned careless and negligent acts or omissions by the Defendant, WEXFORD, the Plaintiff's decedent, ALEX ALVAREZ, suffered injuries of personal and pecuniary nature, including but not limited to, medical expenses, physical and emotional trauma, conscious pain and suffering and loss of normal life, all of which combined or contributed to his death on or about August 9, 2020, and Plaintiff's decedent, ALEX ALVAREZ, would have been entitled to receive compensation from the Defendant, WEXFORD, for these injuries had Plaintiff's decedent survived.

Wherefore, the Plaintiff, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, requests that this Honorable court enter judgment in her favor and against the Defendant, WEXFORD HEALTH SOURCES, INC, in a sum in excess of $75,000 and for any other relief deemed appropriate under the circumstances

*/s/ Katherine A. Cárdenas*
Attorney for the Plaintiff
Loizzi Cárdenas Law
Attorneys for Plaintiff
218 North Jefferson Street, Suite 301
Chicago, IL  60661
(312) 781-0082
FAX (312) 234-9942
ARDC: 6237912
nloizzi@lcpilaw.com
kcardenas@lcpilaw.com

**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**BENTON DIVISION**

| | | |
|---|---|---|
| AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased | ) | |
| Plaintiff | ) | |
| v. | ) | Case No. 3:22-cv-566 |
| VIPIN SHAH, MD, INDIVIDUAL APPEARING ON EXHIBIT A, believed to be Deanna Seed, INDIVIDUAL APPEARING ON EXHIBIT B, name currently unknown, INDIVIDUAL APPEARING ON EXHIBIT C, name currently unknown, INDIVIDUAL APPEARING ON EXHIBIT D, believed to be Pamela Ward, and WEXFORD HEALTH SOURCES, INC; | ) | |
| Defendants | ) | |

**AFFIDAVIT**

Your affiant, Katherine Cárdenas, attorney for the Plaintiffs, AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased, being first duly sworn, deposes and states that:

1. I am the attorney for the Plaintiff, AMY HERNANDEZ.

2. I have consulted and reviewed the facts of this case with a health professional licensed to practice medicine in all its branches, whom I reasonably believe is knowledgeable in the relevant issues involved in the particular action, who has practiced within the last six years in the same area of medicine that is at issue herein and that I believe the health care professional is qualified by experience or demonstrated competence in the subject matter of the case.

3. That the reviewing health professional has determined in a written report, after a review of the medical records and other relevant material involved in the particular action that there is a reasonable and meritorious cause for filing such action.

4. That I have concluded, on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing this action.

5. A true and correct copy of the report of the reviewing physician is attached here.

*Katherine A. Cárdenas*
Katherine A. Cárdenas

Under penalties as provided by law pursuant to 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

*Katherine A. Cárdenas*
Katherine A. Cárdenas

Loizzi Cárdenas Law, LLC
218 N. Jefferson, Suite 301
Chicago IL 60661
ARDC: 6237912
kcardenas@LCPILaw.com

**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**BENTON DIVISION**

AMY HERNANDEZ, as Administrator      )
of the Estate of ALEX ALVAREZ, deceased  )
     Plaintiff                            )
v.                                     )       Case No. 3:22-cv-566
VIPIN SHAH, MD, INDIVIDUAL APPEARING ON  )
EXHIBIT A, believed to be Deanna Seed, INDIVIDUAL  )
APPEARING ON EXHIBIT B, name currently unknown,  )
INDIVIDUAL APPEARING ON EXHIBIT C, name  )
currently unknown, INDIVIDUAL APPEARING ON  )
EXHIBIT D, believed to be Pamela Ward, and  )
WEXFORD HEALTH SOURCES, INC;  )
     Defendants                       )

## DAMAGES AFFIDAVIT

I, Katherine Cárdenas, being first sworn on oath, state:

1. I am a partner in the law firm of LOIZZI CÁRDENAS LAW, 218 N. Jefferson, suite 300, Chicago IL 60661, and am in charge of preparation and trial on the above-entitled matter.
2. Pursuant to Illinois Supreme Court Rule 222(b), the total money damages to be sought by the Plaintiff exceeds seventy five thousand dollars.

    FURTHER YOUR AFFIANT SAYETH NOT.

Under penalties as provided by law pursuant to 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

*Katherine A. Cárdenas*
_____
Katherine A. Cárdenas

Loizzi Cárdenas Law, LLC
218 N. Jefferson, Suite 301
Chicago IL 60661
312-781-0082
ARDC: 6237912
nloizzi@LCPILaw.com
kcardenas@LCPILaw.com

February 25, 2022
Katherine Cardenas
Loizzi Cárdenas Law, LLC
218 N. Jefferson Street, Suite 300
Chicago, Illinois 60661

### Re: Alex Alvarez

Dear Ms. Cardenas:

At your request, I have reviewed the following medical records of Alex Alvarez:

1. Carle Foundation Hospital, June through August 2020
2. Illinois Department of Corrections Medical Records (Wexford Health Sources), February 2019 through August 2020

I am an actively practicing physician licensed to practice medicine in the State of Connecticut. I have been practicing internal medicine for many years, including the last six years. I am board-certified in Internal Medicine. My practice is internal medicine and includes the evaluation and treatment of acute gastric hemorrhage, spontaneous rupture of esophageal varices, hepatic cirrhosis and sequelae related to acute gastric hemorrhage, spontaneous rupture of esophageal varices, and hepatic cirrhosis involved in this matter. I am familiar with evaluation, diagnosis, and treatment issues involved in this case. I am also familiar with the standard of care for physicians and medical practitioners regarding evaluation and diagnosis of acute gastric hemorrhage, spontaneous rupture of esophageal varices, and hepatic cirrhosis.

In my opinion and to a reasonable degree of medical certainty, Dr. Vipin K. Shah, Wexford Health Sources, and Individuals Appearing on Exhibits A, B, C, and D, including, but not limited to the registered and licensed practical nurses assigned to Lawrence Correctional Center, fell below their respective standards of care during the evaluation, diagnosis, and subsequent observations of the infirmary presentation of Mr. Alvarez which subsequently led to his death on August 9, 2020.  He died of cardiopulmonary arrest secondary to massive gastrointestinal hemorrhage.

**Pertinent Past Medical History:**
On October 8, 2019, Mr. Alvarez was taken from Lawrence Correctional Center to Carle Foundation Hospital in Urbana, Illinois for an upper GI endoscopy, which showed Grade I

esophageal varices, Grade A esophagitis, and gastritis. Records showing these impressions were included in Mr. Alvarez's medical record at Lawrence Correctional Center.

On June 3, 2020, at approximately 2:45 a.m., Mr. Alvarez presented to Lawrence Correctional Center infirmary and/or sick call complaining of abdominal pain, coughing up blood/nickel-size blood clots, and bloody stools.  Mr. Alvarez was seen by a nurse who noted his symptoms and his history of esophageal varices and hepatitis C.  Approximately 40 minutes later, at 3:25 a.m. on June 3, 2020, Mr. Alvarez was transported to Carle Hospital Emergency Department. A doctor at Carle Hospital performed an esophagogastroduoenoscopy, which indicated that Mr. Alvarez was suffering from large esophageal varices, an ulcer overlying one of the esophageal varices, chronic active gastritis, and at least 2-4 gastric ulcers with necrosis. The endoscopy further indicated a large fresh clot in Mr. Alvarez's stomach. Mr. Alvarez was treated for these conditions at Carle Hospital and discharged to Lawrence Correctional Center on June 4, 2020. Records of Mr. Alvarez's visit to Carle Hospital on June 3-4, 2020 were included in Mr. Alvarez's medical record at Lawrence Correctional Center. An outpatient progress note dated June 4, 2020 and signed by Individual Appearing On Exhibit A noted that Mr. Alvarez had been diagnosed with esophageal and gastric ulcers.

**Sequence of Events:**
On August 8, 2020, at approximately 6:00 a.m., Mr. Alvarez presented to the Lawrence Correctional Center infirmary and/or sick call complaining of bleeding from his rectum, lightheadedness, weakness, stomach pain, cold, clammy sweats, and nausea. Given Mr. Alvarez's recent history of gastrointestinal bleeding and esophageal and gastric ulcers/varices, Mr. Alvarez's symptoms indicated that he was suffering from internal bleeding and needed emergency medical treatment at a hospital to control the bleeding.

On August 8, 2020, at approximately 6:00 a.m., Mr. Alvarez saw Individual Appearing on Exhibit A, regarding his complaints. Individual Appearing on Exhibit A was aware of Mr. Alvarez's history of gastrointestinal bleeding and esophageal varices and gastric ulcers. Yet, Individual Appearing on Exhibit A advised Mr. Alvarez to return to sick call if symptoms persisted or worsened after two weeks. On August 8, 2020, at approximately 6:20 a.m., Individual Appearing on Exhibit A spoke with Dr. Shah regarding Mr. Alvarez's complaints.  Dr. Shah was aware of Mr. Alvarez's history of gastrointestinal bleeding, esophageal varices and gastric ulcers from Mr. Alvarez's medical records.  Dr. Shah ordered a blood test for Mr. Alvarez and directed that abnormal results be reported to him. On August 8, 2020, at approximately 7:30 a.m., Individual Appearing on Exhibit B saw Mr. Alvarez and advised Mr. Alvarez to notify the nurse if any bleeding occurred. On or about August 8, 2020, at approximately 7:30 a.m., Mr. Alvarez was sent back to his cell. This was despite the fact that Mr. Alvarez's medical records showed a

history of gastrointestinal bleeding, esophageal varices and gastric ulcers, and that Mr. Alvarez's symptoms indicated the need for emergency medical treatment at a hospital.

On August 8, 2020, at approximately 3:15 p.m., Mr. Alvarez saw Individual Appearing on Exhibit C, who ordered Mr. Alvarez to let Individual Appearing on Exhibit C see Mr. Alvarez's stool. Individual Appearing on Exhibit C noted that Mr. Alvarez was wearing adult diapers.

On August 8, 2020, at approximately 4:20 p.m., Mr. Alvarez showed Individual Appearing on Exhibit C his bloody stool and advised Individual Appearing on Exhibit C that it may be his varices or ulcer.  Individual Appearing on Exhibit C told Mr. Alvarez the bleeding was not from his varices or ulcer despite Mr. Alvarez's medical records showing a history of gastrointestinal bleeding and esophageal varices and gastric ulcers. Individual Appearing on Exhibit C noted a diagnosis of "GI Bleed vs Internal hemorrhoids" and a deterioration in comfort, but returned Mr. Alvarez to his cell.

On August 8, 2020, at approximately 11:15 p.m., Mr. Alvarez presented to the infirmary and/or sick call complaining of passing blood and stool and saw Individual Appearing on Exhibit C regarding his complaints. At approximately 11:39 p.m. on August 8, 2020, Individual Appearing on Exhibit A brought Individual Appearing on Exhibit C results of the lab tests ordered by Dr. Shah which showed that Mr. Alvarez's hemoglobin level and lab results were lower than normal. The lab results further confirmed that Mr. Alvarez was bleeding internally and in need of emergency medical treatment at a hospital.

Individual Appearing on Exhibit C noted a diagnosis of gastrointestinal bleeding or internal hemorrhoids and deterioration in comfort, and noted that she would have the day shift call and report the lab results to Dr. Shah.  Rather than attempt to transport Mr. Alvarez to a hospital Individual Appearing on Exhibit C gave Mr. Alvarez fresh diapers and retuned him to his cell at approximately 11:40 p.m.

The following morning, on August 9, 2020, Dr. Shah was notified of Mr. Alvarez's lab results, which showed that Mr. Alvarez was losing blood and in need of emergency medical care at a hospital, but Dr. Shah did not order Mr. Alvarez to be transported to a hospital. Instead, Dr. Shah scheduled an appointment with Mr. Alvarez two days later for August 11, 2020.

On August 9, 2020, at approximately 5:30 p.m., Mr. Alvarez spoke with Individual Appearing on Exhibit D. Mr. Alvarez requested to see a doctor but was denied the request.

On August 9, 2020, at approximately 9:15 p.m., Mr. Alvarez was found unresponsive and bleeding in his cell. Mr. Alvarez was bleeding to death, and in desperate need of an ambulance to take him to the hospital, but Individual Appearing on Exhibit D put Mr. Alvarez in a wheelchair and wheeled him to the first aid room in the health care unit at Lawrence Correctional Center. Mr. Alvarez arrived at approximately 9:18 p.m. in the first aid room at the

heath care unit at Lawrence Correctional Center where he was attended to by Individual Appearing on Exhibit C and Individual Appearing on Exhibit D.

Neither Individual Appearing on Exhibit C nor Individual Appearing on Exhibit D called for an ambulance when Mr. Alvarez initially arrived in the health care unit. Instead, Individual Appearing on Exhibit C began clearing blood off of Mr. Alvarez and attempted to get a blood pressure reading. Individual Appearing on Exhibit C could not get a blood pressure reading and noted that Mr. Alvarez was very clammy and unable to hold still. Individual Appearing on Exhibit D also could not detect a blood pressure. Between approximately 9:25 and 9:30 p.m. on or about August 9, 2020, Mr. Alvarez managed to gather the strength to cry out "I want to go to hospital" and "Help me I need an ambulance." Between approximately 9:25 p.m. and 9:30 p.m. on or about August 9, 2020, Individual Appearing on Exhibit D left the first aid room and called Dr. Shah to inform him of Mr. Alvarez's status. Dr. Shah instructed Individual Appearing on Exhibit D to call the hospital. At approximately the same time Individual Appearing on Exhibit D was speaking with Dr. Shah, Mr. Alvarez fell back on his cot and white foam began coming from his mouth. Individual Appearing on Exhibit C then began CPR and noted that Mr. Alvarez had a faint carotid pulse, but no femoral pulse.

After speaking to Dr. Shah, Individual Appearing on Exhibit D spoke with supervisors at Lawrence Correctional Center regarding calling an ambulance for Mr. Alvarez before returning to the first aid room. An ambulance was not requested for Mr. Alvarez until sometime between approximately 9:35 and 9:39 p.m. As the ambulance was en route to Lawrence Correctional Center, bright red blood began coming out of Mr. Alvarez's mouth. The ambulance arrived at the Lawrence Correctional Center at approximately 9:50 p.m.  It was another 30 minutes, until approximately 10:20 p.m., before the ambulance was able to leave the Lawrence Correctional Center with Mr. Alvarez.  Mr. Alvarez finally arrived at Carle Hospital at approximately 10:28 p.m. and was pronounced dead several minutes later at approximately 10:37 p.m.

Mr. Alvarez had a known medical history of hepatic cirrhosis, esophageal varices with previous banding, as well as a gastric bleeding that was evaluated and treated at Carle Foundation Hospital just 2 months prior. Due to his medical history, he was high risk for gastrointestinal hemorrhage that could spontaneously result from the rupture of esophageal varices. Portal hypertension results in high pressure in the venous circulation within the gastrointestinal tract which can result in exsanguinating hemorrhage.

Mr. Alvarez's presentation to the infirmary on the morning of August 8, 2020, required emergent evaluation by a physician in a facility where emergent medical treatment could be provided. Dr. Shah and the staff of Wexford all should have objectively known Mr. Alvarez's medical condition was serious, life-threatening and in need of emergency treatment. They all failed to identify the severity of his condition or for reasons unknown ignored the severity of his condition. He was denied the opportunity for immediate medical evaluation by a physician.  He

was further denied the immediate medical intervention that was warranted by his presentation. This is a deviation from the standard of care. Mr. Alvarez should have been immediately transported to the emergency department for prompt evaluation and treatment to further prevent exsanguination from gastric hemorrhage. The fact that Dr. Shah and the Wexford staff were indifferent to Mr. Alvarez's medical complaints goes beyond a deviation of the standard of care to gross indifference/neglect. Mr. Alvarez stated to the nurse that it could be his varices or another ulcer. He was correct. Dr. Shah and the nurse ignored this. Mr. Alvarez was denied prompt medical attention as warranted. He should have been monitored closely with consecutive CBCs, had an upper endoscopy with treatment, and received blood transfusions in the setting of an acute care medical facility. The denial of this treatment is a breach in the standard of care.

Dr. Vipin K. Shah and the staff of Wexford Health Sources had a duty to evaluate, diagnose, and provide immediate medical treatment including transferring Mr. Alvarez to an acute care medical facility for further medical diagnosis and emergent treatment based upon his presenting symptoms and complaints. This is a deviation from the standard of care. They failed to identify his presenting symptoms, and abnormally low hemoglobin were indicative of massive gastrointestinal hemorrhage likely related to his previously diagnosed esophageal varices complicated by portal hypertension related to hepatic cirrhosis that warranted timely diagnosis and emergent intervention. The failure to do so is a deviation from the standard of care, gross negligence, and utter indifference to a medical emergency. These failures resulted in delayed diagnosis of massive gastric hemorrhage and subsequently cardiopulmonary arrest which led to death.

An autopsy of Mr. Alvarez revealed acute massive gastric hemorrhage from spontaneous rupture of esophageal varices and hepatic cirrhosis, advanced micronodular cirrhosis without steatosis and a small healed esophageal ulcer.

Had Alex Alvarez been properly assessed, evaluated, and treated, including immediate transfer for acute gastric bleeding upon his presentation to the infirmary at Lawrence Correctional Facility, he more likely than not would have survived. Mr. Alvarez died as a result of cardiopulmonary arrest resulting from massive gastrointestinal hemorrhage from ruptured esophageal varices. The standard of care was to evaluate Mr. Alvarez's bright red blood per rectum, review his past medical history, including previous banding of esophageal varices and gastric bleeding 2 months prior, transfer him emergently to an acute care facility where he could receive prompt and emergent medical evaluation and treatment to prevent further gastrointestinal hemorrhage that could lead to cardiopulmonary arrest and death. Mr. Alvarez was denied the opportunity to receive life-saving treatment.

In my opinion, within a reasonable degree of medical certainty, Dr. Vipin K. Shah and the staff of Wexford Health Sources deviated from the standard of care, were grossly negligent, and

utterly indifferent to a medical emergency. Further, their deviations from the standard of care caused or contributed to Alex Alvarez's death.

Accordingly, I believe there is a meritorious basis for an action against Vipin K. Shah, Wexford Health Sources and Individuals Appearing on Exhibits A, B, C, and D. All of my opinions are to a reasonable degree of medical certainty. My opinions are based on the materials that are available to me at this time. As more information becomes available, my opinions may be subject to expansion and/or modification. Moreover, I have additional opinions and detailed thoughts that have not been included here given the limited purpose of this letter.

Very truly yours,


Exhibit A

ILLINOIS DEPARTMENT OF CORRECTIONS

## Offender Outpatient Progress Notes

LAWRENCE Correctional Center

| Offender Information: | | |
|---|---|---|
| Alvarez | Alex | ID#: M04928 |
| Last Name | First Name MI | |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8/8/20 6:20AM | RN Note<br>S/O) Spoke c̄ Dr. Shah in regards to I/m complaints. He was very argumentative c̄ this nurse c̄ multiple complaints stating different times these complaints were taking place each time. I/m voiced C/o lightheadedness, SOB, weakness, stomach pain, H/o HepC H/o Cirrohosis, cold clammy sweats, nausea, N.O. recd.<br><br>A) N.O. | P) ① 23° infirmary placement for observation<br>② CBC to be taken to LCMH to be ran STAT. Abnormal results to be reported to Dr. Shah.<br><br>Q Seed, RN |


Exhibit B

<u>LAWRENCE CORRECTIONAL</u> Center

**Offender Information:**

Last Name: Alvarez

First Name: Alex

MI:

ID#: M04928

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8-8-20 7:30Am | LPN Note ~~RN Note~~ | **Plan:** Continue to monitor patient. |
| | S: (Chief Complaint) S/R he has been having bleeding from rectum | |
| | O: BP 116/61 P 96 R 18 T 98.4 SPO2 96 % RA Wt. 278.2 | |
| | Mental Status: AIO X3 | |
| | PERRLA: equal | |
| | Heart: RRR | |
| | Circulation: WNL | |
| | Radial Pulses ✓ Pedal Pulses ✓ | |
| | Skin (Circle): (Warm) Cool Moist (Dry) Pink Pale | |
| | Lungs: Clear | |
| | Abdomen: SNT | |
| | Bladder: Ø distended | |
| | Wounds: Ø Dressing: Ø | |
| | Pain: Scale "1-10" Ø Location: | |
| | Diagnosis Based Assessment: Possible internal hemorroids | |
| | A: Nursing Diagnosis Alt in Comfort | |
| | | Nurse's Signature: A Fee LPN |


Exhibit C

<u>LAWRENCE CORRECTIONAL</u> Center

**Offender Information:**

Alvarez _____ Alex, _____ ID#: M34928
Last Name          First Name      MI

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8·8·2020 315p | **RN Note**<br>S: (Chief Complaint) Voices d urines - asked I/m to let nurse see any stool. Has depends on.<br>O: BP 109/69 P 92 R 18 T 97.1<br>SPO2 97 % RA Wt. Mondays<br>Mental Status: A/o v3<br>PERRLA: equal<br>Heart: reg<br>Circulation: Wnl<br>Radial Pulses: pos Pedal Pulses: pos<br>Skin (Circle): (Warm) Cool Moist (Dry) Pink Pale<br>Lungs: clear<br>Abdomen: soft, large abd<br>Bladder: denies<br>Wounds: Ø Dressing: Ø<br>Pain: Scale "1-10" Ø Location:<br><br>Diagnosis Based Assessment: GI Bleed VS Internal hemorrhoids<br><br>A: Nursing Diagnosis Alteration in Comfort | Plan: Continue to monitor patient.<br>420p - I/m showed this nurse some red to toilet with BM. No formed stool noted. I/m states, "It might be my varices or ulcer." Explained that would be a darker color + I/m just shrugged. Denies external hemorrhoids.<br><br><br><br><br><br><br><br>Nurse's Signature: _____ |

Printed on Recycled Paper

DOC 0085 (Eff. 9/2002)
(Replaces DC 7147)


ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER OUTPATIENT PROGRESS NOTES
### LAWRENCE CORRECTIONAL CENTER

| Offender Information: |
|---|
| Alvarez _Last Name_    Aloy _First Name_    __ MI    ID#: M04958 |

| Date/Time | Subjective, Objective, Assessment | Plans |
|---|---|---|
| 8-9-20 5:30 P | RN Note. Inmate seeing Insulin line SR still states feel 100% felt he needs to see Dr inmate assured would be epass to see NP in AM. Updated skin up respiration et unlabored Verbally okay with seeing NP in morning. A Insulin line | P Cont A0C epass to see NP 8-10-20 _(signature)_ |

Distribution: Offender's Medical Record

Printed on Recycled Paper

DOC 0084 (Eff. 9/2002)
(Replaces DC 7147)