IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *AMY HERNANDEZ, as Administrator of the Estate of ALEX ALVAREZ, deceased,* ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 3:22-cv-00566-NJR |
| *VIPIN SHAH, MD, DEENA SEED, AMY FREY, AMY THURMAN, PAMELA WARD and WEXFORD HEALTH SOURCES, INC.,* ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO BIFURCATE TRIAL
AND STAY DISCOVERY ON MONELL CLAIMS**

COME NOW Defendants Wexford Health Sources, Inc., Vipin Shah, M.D., Deena Seed, Amy Frey, Amy Thurman, and Pamela Ward, by and through their attorneys Sandberg Phoenix & von Gontard, P.C., and for their memorandum of law in support of their motion to bifurcate the *Monell* claims from other asserted claims, state as follows:

Under Federal Rule of Civil Procedure 42(b), the court may, in the interest of convenience, avoiding prejudice, or expediting and economizing the case, order a separate trial of separate claims. *F.R.C.P. 42(b).* Bifurcation may be appropriate if the separation would prevent prejudice to a party or promote judicial economy. *Horton v. City of Chi.*, No. 13-cv-6865, 2016 U.S. Dist. LEXIS 9478 (N.D. Ill. Jan. 26, 2016). The Seventh Circuit has emphasized that only one of the above criteria, prejudice or judicial economy, needs to be satisfied for a court to grant bifurcation. *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). Additionally, Courts may order *Monell* claims to be tried separately. *See Medina v. Chicago*, 100 F.Supp.2d 893, 894 (N.D. Ill. 2000)

("There is no question that a district court has the discretion to sever a *Monell* claim against a municipality from claims against individual police officers and stay litigation of the *Monell* claim until the rest of the case is resolved.").

Plaintiff has asserted claims against individual defendants and a *Monell* claim against Wexford Health Sources, Inc. Bifurcating the *Monell* claim has several advantages. First, a disposition of the individual claims will either legally or practically end the litigation. If plaintiff fails to prove that they suffered a constitutional injury based on the individual defendants' conduct, plaintiff's claims against the individual defendants fail and, as such, so does plaintiff's *Monell* claim against Wexford. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

Second, bifurcation is likely to bring about an earlier disposition of the suit because bifurcation allows a bypass of additional discovery relating to the *Monell* claims, which will add additional significant, and possibly unnecessary, time, effort, cost, and complications to the discovery process. *See Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). Separating the *Monell* claim from the individual claims will allow this Court to more expediently get to the point of where dispositive motions on the deliberate indifferent claims can be considered.

The Northern District of Illinois addressed a situation analogous to the matter at issue in *Carr v. Chicago*. In that case, plaintiff had filed suit against several police officers, the city of Chicago, and several supervisory personnel. *Carr v. City of N. Chi.*, 908 F. Supp. 2d 926 (N.D. Ill. 2012). The city and supervisory personnel moved to bifurcate trial, arguing doing so would promote convenience and judicial economy and bifurcation would streamline the litigation and allow the Court and parties to address the *Monell* claims only if necessary to do so. *Id.* at *2. The Court agreed, holding that bifurcating the trial and trying the *Monell* claim only, if necessary, would save judicial resources. *Id.* at *4.

Similarly, in *Ackerman v. Allen,* Plaintiff sued defendant police officers on three counts under Section 1983. Each count included a municipal liability claim against the City under *Monell* as plaintiff claimed that his injuries stemmed from the City's policy, practice or custom of failing to prevent such incidents. Defendants filed a motion to bifurcate and stay discovery on plaintiff's *Monell* claims. After carefully considering the arguments on both sides, the Court found that bifurcation was appropriate. Because *Monell* claims require an extensive amount of evidence that could be made unnecessary through bifurcation, staying the *Monell* claims would greatly increase judicial efficiency and minimize prejudice to all parties. *Ackerman v. Allen*, No. 16 C 6199, 2017 U.S. Dist. LEXIS 64102, at *17 (N.D. Ill. Apr. 27, 2017) Plaintiff's individual claims against the Defendant Officers involved two officers and events that unfolded in a matter of minutes. To litigate these claims, Plaintiff had to present evidence relating to the two officers and evidence establishing what happened during those minutes. Plaintiff's *Monell* claims, however, involved the conduct, training, and discipline of countless officers, as well as any number of statements and actions by Chicago officials, over the course of years. To litigate these claims, Plaintiff would have had to collect and present sufficient evidence to paint a coherent picture of these parties' actions and omissions over this period. The sums of evidence required by these two sets of claims were wildly different in scope. The Court noted Plaintiff was correct in stating that "no bright line exists separating *Monell* discovery from *non-Monell* discovery," but the Court was satisfied that discovery would be significantly shortened if the claims were bifurcated. *Id.*

Identical to the case at hand, Plaintiff's claims against the individual defendants unfolded in a short matter of time over the weekend of Saturday, August 8, 2020, and Sunday, August 9, 2020. To litigate the individual claims, the focus will be on the actions of the defendant nurses and Dr. Shah over a roughly 34-hour period. Plaintiff's *Monell* claim involves allegations of indifferent

policies and procedures relating to conduct, training, discipline, and review of countless employees, as well as any number of statements and actions by Wexford officials over the course of years. To litigate these claims, Plaintiff will have to collect and present sufficient evidence to paint a coherent picture of Wexford's actions and purported omissions over this period.

As the Court is aware, much of the written discovery conducted by Plaintiff has been focused on Wexford's role in *Lippert v. Sudinez,* N.D. Ill. Case No. 10-cv-4603 which was filed almost 14 years ago in July of 2010 (more than 700 weekends as opposed to one) and death reviews conducted by Dr. Shah over the past decade. As set forth in Defendants' Response to Motion to Compel (Doc. No. 96) Wexford has already spent over $65,000 in fees (not including the fees charged by other firms assisting with responding to discovery) and produced almost 100,000 pages of documents relating to *Lippert* and plaintiff's *Monell* claims. Plaintiff has pending requests for even further discovery relating to their *Monell* claims, including additional requests to admit and depositions, and two separate motions to compel, all of which may be avoided if the individual defendants prevail on the deliberate indifference claims filed against them.

Similarly, the sums of evidence required by these two sets of claims are extremely different in scope. The issues for the individual claims are simple: Did the individual defendants commit medical malpractice which caused the death of Alex Alvarez and did they act with deliberate indifference over the weekend of August 8-9, 2020, when Mr. Alvarez was admitted to the infirmary during the early morning of August 9 for rectal bleeding believed to be attributable to his hemorrhoids which his own family has admitted he suffered from rather than a more serious GI bleed? (*See* Exhibit 1, Amy Hernandez Dep. 61:4-62:24, Irene Hernandez Dep. 76:2-76:16.) The issues involved in plaintiff's *Monell* claims are much more complicated. While plaintiff's counsel has not fully delineated their *Monell* theories, with almost 100,000 documents produced

to date, very few of which are likely relevant to the negligence and deliberate indifference claims against the individuals, there are bound to be numerous, if not countless, pretrial motions relating to the admissibility of documents. Moreover, much of the discovery conducted by Plaintiff has related to findings of court-appointed experts and monitors in the *Lippert* case who cannot be deposed per Orders entered in *Lippert* and thus will constitute inadmissible hearsay. *Lymon v. Chamberlain*, No. 17 CV 50093, 2020 U.S. Dist. LEXIS 221117, at *18 (N.D. Ill. Nov. 24, 2020). Substantial time will be required to brief and argue evidentiary issues relating to the *Monell* claims which will not be required for the claims against the individual defendants. Motions relating to the ability of the plaintiff to present evidence of those findings will not be necessary if the individual defendants are found not to have been deliberately indifferent.

Alternatively, the court should also bifurcate trial to avoid the extreme prejudice to the individual defendants. *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999). One need not look beyond the petition to see that plaintiff's *Monell* claims are based, at least in substantial part, on the actions of all five individual defendants. (Pl.'s Am. Compl. 15-16, Doc No. 64.) Plaintiff's intention is further evidenced through opposing counsel's deposition questioning in relation to Dr. Shah's involvement in previous, unrelated litigation and Plaintiff's attorneys' suggestion that Dr. Shah is implicated in the death of several other inmates. (*See* Exhibit 2, Shah Dep. 218:17-233:17, 263:1-264:25, 274:20-285:22.) As recently as February 13, 2024, opposing counsel described Plaintiff's *Monell* claim in this case as involving "a person who was killed by a doctor with a pattern of killing people over and over again and has his actions covered up by his company." The prejudice to Dr. Shah by the possible admission of other lawsuits against him or other instances of where patients died while under his care during the many years he worked for Wexford is obvious, but Dr. Shah is not the only individual defendant who will be prejudiced

by a trial of the individual claims together with the *Monell* claim against Wexford. Deposition questioning by opposing counsel held a strong focus on the deaths of other inmates cared for by some of the individual defendant nurses. (*See* Exhibit 3, Frey Dep. 76:14, Seed Dep. 69:1-25.) In addition to questioning the individual nurse's involvement in other deaths, Plaintiff's counsel also heavily questioned the individual defendants about their previous experiences with being disciplined by Wexford. (*See* Exhibit 4, Frey Dep. 31:17-32:24, Seed Dep. 25:13-28:1, 66:21-67:4, Thurman Dep. 19:18-21, Ward Dep. 61:19-65:20.) These questions go beyond the scope of the claims against the individual defendants. If a jury is exposed to the suggestion that the individual defendants are involved in an alleged series of deaths due to inadequate care and prior instances where they may have been disciplined, the individual defendants will be so unfairly prejudiced from the mere allegation, any efforts to overcome this prejudice will be futile. Bifurcation will wholly prevent this unfair prejudice for the following reasons.

Confusion of the evidence and the two distinct bases for liability and damages seems unavoidable due to the complexity of the claims if the Monell claim is tried simultaneously with the claims against the individual defendants. As previously stated, Plaintiff likely intends to introduce evidence of alleged acts involving the individual defendants including previous inmate deaths or their involvement in unrelated litigation. Without bifurcation, the jury is invited to unfairly find the individual defendants liable due to a virtual tidal wave of evidence of other acts. Rather than risk confusion, bifurcation will help narrow the issues for purposes of the *Monell* claim and prevent jury confusion. *Berardi v. Vill. of Sauget*, No. 05-898-CJP, 2008 U.S. Dist. LEXIS 100738 (S.D. Ill. Dec. 12, 2008).

Bifurcation will also reduce unfair prejudice to the individual defendants by minimizing the opportunities for the jury to infer the guilt of one party by the acts of another. *Ackerman v.*

*Allen*, at *17 (N.D. Ill. Apr. 27, 2017) In addition to Plaintiff's intention to introduce evidence of alleged unrelated acts involving the individual defendants, Plaintiff may present alleged misconduct by Wexford and non-party Wexford employees to prove his *Monell* claims. This evidence would lead a jury to infer that the individual defendants themselves engaged in similar misconduct regardless of the evidence presented against them at trial. Conversely, after hearing evidence of the distressing events Plaintiff would present against the individual defendants, a jury could rule against the employer/entity in the absence of sufficient proof under *Monell* to "send a message." *Id.*

Failure to bifurcate here would unfairly prejudice defendants because it will result in the jury relying on Wexford's conduct in deliberating on the individual defendants' deliberate indifference. *See Medina*, 100 F.Supp.2d at 895 (noting admission of "policy" evidence may unfairly prejudice individual defendants in a *Monell* claim). Separating the individual claims and the *Monell* claims removes the potential for this conflict without prejudicing plaintiff and while also conserving resources.

Bifurcating the Monell claims will allow the individual defendants to present their defenses free from prejudice caused by the presentation of *Monell* evidence. Plaintiff has suggested Alex Alvarez was brought to the infirmary rather than being sent out as a cost-savings measure while ignoring that he had been sent to the emergency room two months earlier when he presented with symptoms more suggestive of internal bleeding rather than due to hemorrhoids. Plaintiff's arguments relating to staffing concerns at Lawrence Correctional Center ignore that in August of 2020, before there was a vaccine to treat Covid-19, there was an uptick in Covid-19 cases causing a nationwide shortage of nurses. Moreover, they also ignore that Alex Alvarez's care was elevated when he first presented to the Health Care Unit by placing him in the infirmary. Even after his

discharge from the infirmary and just a few hours before Alex Alvarez's death, a nurse offered to take Alex Alvares back to the Health Care Unit and he declined. S*ee* Exhibit 5, Ward Dep. 85-86.) At that time, Alex Alvarez was ambulating independently, had no blood on him, was not diaphoretic or sweating, was not short of breath, breathing rapidly or wheezing, did not report nausea or having vomited blood and did not appear to be in any acute distress. S*ee* Exhibit 6, Ward Dep. 150-153.) Plaintiff also ignores that Dr. Shah has testified the decisions he made that weekend were based on his own personal clinical and no decision he made that weekend with respect to Alex Alvarez's care had anything to do with cost of care to either Wexford or IDOC. S*ee* Exhibit 7, Shah Dep. 297-298.) Finally, Plaintiff ignores that an IDOC investigation of the circumstances surrounding Alex Alvarez's death concluded:

> From 8-8-2020 to 8-9-2020 medical staff at LAW CC, were compliant with Individual in Custody ALEX (NMN) ALVEREZ, M04928, medical treatment protocol. Prior to his death ALVEREZ had been scheduled for further assessment and treatment at Lawrence County Memorial Hospital.
>
> Based on investigatory interviews and review of medical documents, both medical and security staff at LAW CC acted within the guidelines set forth in the Illinois Department of Corrections policies which govern emergency medical treatment plan.

*See* Exhibit 8.

Defendants' defenses to the deliberate indifferent claims will be ignored by the jury if defendants are also forced to defend a plethora of other instances where patients have died while incarcerated.

Using limiting instructions to minimize the prejudice that will follow from presenting both the individual and *Monell* claims in the same trial is simply not a feasible alternative in this case. This court will be repeatedly advising the jury that such evidence can only be used for purposes of the *Monell* claim against Wexford (or to use Plaintiff's counsel's words, "over and over again." More likely than not, repeated limiting instructions will fall on deaf ears after the second or third

time. The unfair prejudice associated with trying the claims together is grave, and bifurcation avoids the unfair prejudice entirely. *McLaughlin v. State Farm Mutual Auto. Ins. Co.*, 30 F.3d 861, 870-71 (7th Cir. 1994).

Judge Dugan's reasoning for not bifurcating *Monell* claims in *Wiley v. Young*, No. 3:21-cv-599-DWD, 2023 U.S. Dist. LEXIS 141696 (S.D. Ill. Aug. 14, 2023) is inapplicable to the case at hand because the Plaintiff here has made it abundantly clear that her *Monell* claim is based, in substantial part if not entirely, on the actions of Dr. Shah. Judge Dugan specifically noted plaintiff's *Monell* claims were not based on the actions of the individual defendants such that *Monell* discovery will have to occur regardless. *Id.* at 10 That is not the case here. Where the foundation of Plaintiff's *Monell* claim is dependent upon a finding that Dr. Shah was deliberately indifferent, the Plaintiff's enunciated *Monell* claim will not be able to independently survive if Dr. Shah is not found to be deliberately indifferent.

Additionally, in *Wiley*, the care which was claimed to be both negligent and deliberately indifferent in *Wiley* spanned a three-year period from June 2016 to June 2019. Here, as already discussed, the care at issue in the instant case spanned less than 36 hours. (Pl.'s Am. Compl. 4-6.) Thus, a trial on the individual claims will be much more limited in the instant case than in *Wiley*. Here, the trial of Plaintiff's claims against the individual defendants will be longer and more legally and factually complex if the *Monell* claim is not bifurcated. Although the parties have not estimated the number of additional trial days that would be needed for the *Monell* claim, it undoubtedly would take a significant amount of time to present evidence concerning Wexford's policies and practices that allegedly led to the individual defendants violating Mr. Alvarez's constitutional rights. *Id.*

Federal Rule of Civil Procedure 26(d) also permits a court to stay discovery on *Monell* claims. The plethora of bifurcation motions and the inclination of many judges to grant them stems in large part from the recognition that, often, "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them." *Moore v. City of Chi.*, No. 02 C 5130, 2007 U.S. Dist. LEXIS 77054 (N.D. Ill. Oct. 15, 2007). Any doubt in the Court's mind about this can easily be resolved by looking at the oppressive proposed Rule 30(b)(6) Motion filed with the Response to Motion to Compel Depositions filed contemporaneously herewith. Plaintiffs *Monell* requests thus far are vast and burdensome, and only represent a sample of what is likely to come. A stay of the *Monell* claim would allow the parties to reach the merits of Plaintiff's claims more quickly against the individual defendants. These claims focus on the medical care provided to Mr. Alvarez. *Medina*, 100 F. Supp. 2d at 894. By contrast, the *Monell* claim against Wexford entails elements of proof that are not involved when the plaintiff sues only the employees claimed to have been directly involved in the deprivation of his rights and covers a significant time leading up to the period of care. *Horton v. City of Chi.*, No. 13-cv-6865, 2016 U.S. Dist. LEXIS 9478, at *10-11 (N.D. Ill. Jan. 26, 2016).

WHEREFORE, Defendants request this Honorable Court grant its Motion to Bifurcate Trial and Stay Discovery on *Monell* Claim, and order Plaintiff's *Monell* claims tried only if she prevails on her claims against the individual defendants.

                    SANDBERG PHOENIX & von GONTARD P.C.

By: */s/Rodney M. Sharp*
Rodney M. Sharp, #6191776IL
Dennis S. Harms, #6291610IL
Alejandro S. Valdez, #68528MO
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
rsharp@sandbergphoenix.com
dharms@sandbergphoenix.com
alvaldez@sandbergphoenix.com

*Attorneys for Defendants Wexford Health Sources, Inc., Vipin Shah, M.D., Deena Seed, Pamela Ward, Amy Frey and Amy Thurman*

### Certificate of Service

I hereby certify that on this the 23rd day of February 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Marko Duric
Robert Robertson
Robertson Duric
marko@robertsonduric.com
robrobertson1@sbcglobal.net
*Attorneys for Plaintiff*

Nicholas V. Loizzi
Shauna M. Reitz
Loizzi Law Offices
nloizzi@Loizzilaw.com
sreitz@loizzilaw.com
*Attorneys for Plaintiff*

                    */s/Rodney M. Sharp*